UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMANDA LANDIS, as personal
representative for the estate of Charles
Christopher Keiser, Deceased

Case No. 2:05-cv-74013

Plaintiff,

HONORABLE STEPHEN J. MURPHY, III

v.

GREG GALARNEAU,

Defendant.
_____/

**OPINION & ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE,
<u>FOR A NEW TRIAL</u> (docket no. 144)**

This matter is before the Court on plaintiff Amanda Landis's Renewed Motion for Judgment as a Matter of Law, or in the alternative, for a New Trial.[1] On October 17, 2005, Landis, as the personal representative for the estate of her father Charles Keiser, filed a civil rights action, pursuant to 42 USC § 1983, against the Livingston County Sheriff's Department and various officers of both the Sheriff's Department and the Michigan State Police Department. Landis alleged that during a pursuit and apprehension of Keiser, which ultimately led to his death, defendants violated Keiser's civil rights and committed assault and battery on him.

Defendants moved for summary judgment on a theory of qualified immunity, and the

---

[1] Landis's motion is entitled "Plaintiff's Motion for JNOV, or, in the Alternative, for a New Trial." A 1991 amendment to Fed. R. Civ. P. 50 replaced the terminology "judgment notwithstanding the verdict" with the current term "judgment as a matter of law." The substance of the law applicable to deciding the motion remains unchanged, but the Court will employ current terminology.

the Court denied the motion. That decision was affirmed by the U.S. Court of Appeals for the Sixth Circuit. All other defendants, including Livingston County Sheriff's Deputies Jim Lynch and Jason Baker, have been dismissed from the case or have settled, leaving Michigan State Trooper Greg Galarneau as the sole remaining defendant.

On April 23, 2009, Landis moved for summary judgment, and the Court denied the motion. Trial commenced on February 10, 2010. On February 16, 2010, before the jury began deliberating, Landis filed a Motion for Judgment as a Matter of Law. The next day, February 17, 2010, the jury returned a verdict in favor of Galarneau, and the Court entered judgment on February 26, 2010. Subsequently, Landis filed the present motion, seeking judgment as a matter of law pursuant to Fed. R. Civ. P. 50, or, in the alternative a new trial, pursuant to Fed. R. Civ. P. 59.[2] The Court has dispensed with oral argument on the motion pursuant to E.D. Mich. Local Rule 7.1(f)(2). For the following reasons, the Court will deny Landis's renewed motion for judgment as a matter of law and deny Landis's motion for a new trial as well.

## RELEVANT FACTS[3]

---

[2] Landis admitted that the brief in support of her motion is "bare bones." Docket No. 144 ¶ 12. Landis asserted that she was unable to file a full brief due to counsel's schedule following trial. *Id*. Further, Landis stated that "Based on the ordering of transcripts, which is necessary for Plaintiff's final research and writing of these motions and the brief in support, Plaintiff requests that this Honorable Court hold the ordinary LR 7 briefing schedule in abeyance until the transcripts have been prepared and give counsel two weeks thereafter in order to file an amended or supplemental motion and brief." *Id*. ¶ 15. Landis received the transcripts, but has long since failed to file a supplemental brief. The Court, therefore, will decide the motion based on the briefs submitted to the Court.

[3] The facts set forth herein are based on the Sixth Circuit's factual account in *Landis v. Baker*, 297 Fed. Appx. 453, 455-458 (6th Cir. 2008), which were confirmed during the week long trial.

2

On the morning of November 25, 2004, several motorists called Livingston County 911 Central Dispatch to report that a bulldozer was blocking the two southbound lanes on US-23 near-59 in Hartland Township. When officer Michigan State Trooper Todd Cardoza, arrived on the scene, he found Keiser trying to enter a large front and rear loader in the median of the highway, south of the bulldozer. After Cardoza approached Keiser, Keiser took off running towards traffic heading northbound on US-23, eventually crossing the freeway toward a fence separating US-23 from Blaine Road. Keiser, ignoring Cardoza's orders to stop, continued running and climbed over the fence.

Galarneau, who had been alerted to the situation, arrived on Blaine Road and saw Keiser walking Southbound toward him. When Keiser noticed Galarneau, he began running back in the opposite direction. By that time, Cardoza had climbed the fence and was running toward Keiser. Despite the officers commanding Keiser to stop, he continued running until Cardoza was able to tackle him to the ground. Galarneau then arrived and attempted to assist Cardoza in restraining Keiser.

At some point, Keiser was able to roll over and grab Galarneau by the throat. Subsequently, Cardoza retrieved Galarneau's baton and struck Keiser in the forearms and thighs. Galarneau then sprayed pepper spray in Keiser's face, which caused Keiser to release his grip on Galarneau's throat. Keiser then stood up and walked into the nearby woods. After Galarneau radioed into dispatch to request backup from an officer with a taser, Galarneau and Cardoza followed Keiser into the woods until Keiser stopped in a swampy area. Other officers, including Lynch and Baker, subsequently arrived on the scene and surrounded Keiser, who was standing in the water.

The ensuing attempts by the officers to remove Keiser from the water and effectuate

an arrest are the subject of this lawsuit. Landis alleges that while attempting to seize Keiser from the water, Galarneau hit him with a baton in the legs ten times, told Lynch to use a taser on Keiser while he was standing in the muddy water, and kneeled on Keiser's back while his face was in the water.

After the officers were finally able to handcuff Keiser and remove him from the water, they noticed that Keiser was not breathing and attempted to resuscitate him. When an ambulance arrived, the EMS team removed water, leaves, twigs, and mud from Keiser's airway. Keiser was pronounced dead upon arriving at the hospital. Two autopsy reports, one conducted by the county, and one ordered privately by the plaintiff, reported finding thick mud in Keiser's airway and lungs, and concluded that he had died as a result of drowning.

I. <u>Landis's Renewed Motion for Judgment as a Matter of Law</u>

Landis's Renewed Motion for Judgment as a Matter of Law, which incorporates her original motion, asserts that the Court should grant judgment as a matter of law on the issue of whether Galarneau engaged in an unreasonable seizure of Keiser. Fed. R. Civ. P. 50(a)(1) provides that the Court should grant judgment as a matter of law "if a party has been fully heard on an issue during a jury trial, and the court finds that a reasonable jury would not have a legally sufficient basis to find for the [non-moving] party on that issue." When considering a motion for judgment as a matter of law, the Court must construe the evidence in the light most favorable to the non-moving party. *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007) (internal citation omitted); *Gray v. Toshiba Am. Consumer Prods.*, 263 F.3d 595, 598 (6th Cir. 2001) ("a motion may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no

genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favoring the moving party."). Further, a Rule 50 motion must be decided on evidence admitted at trial. *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983) ("directed verdict motions are made at trial and decided on evidence that has been admitted.").

The Fourth Amendment prohibition against unreasonable seizures guarantees the right to be free from excessive force during an arrest. *Graham v. Connor*, 449 U.S. 386, 393-94 (1989). Claims that officers used excessive force in effectuating an arrest are analyzed under the "objective reasonableness standard" of the Fourth Amendment. *Id.* "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (internal citations and quotations omitted). In making this determination, attention must be paid to the facts and circumstances of a particular case, including whether the suspect posed an immediate threat to the safety of the officers, and whether the suspect was resisting arrest or attempting to evade arrest by flight. *Id.* at 396; *See Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (the question is "whether the totality of the circumstances justifie[s] a particular sort of. . .seizure."). Further, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

Given this legal framework, Landis has failed to demonstrate that, based on evidence admitted at trial, a reasonable jury would not have a legally sufficient basis to find for Galarneau on the issue of excessive force. Landis asserts that it is undisputed that Galarneau participated in the events which led to Keiser's death by calling for the use of a taser in probe mode while Keiser was standing in water, striking Keiser with a baton, kneeling on his back, acquiescing to the use of a taser in stun mode, and participating in pulling Keiser's hands and arms behind his back and handcuffing him while Keiser was standing in muddy water. Docket 139 ¶ 1-2. Testimony at trial provided the jury with an ample basis to conclude that Galarneau used reasonable force under the circumstances.

First, the testimony clearly established that the circumstances of Keiser's arrest were unique and frenzied. Lynch testified that it was a "chaotic scene," Trial Tr. Vol. 2, 46, and Landis's police practice expert, Joseph Jager, testified that the conditions of Keiser's arrest were not conditions in which officers are ordinarily required to work. Trial Tr. Vol. 4, 115. Further, Lynch testified that while under normal circumstances officers tend to be more patient or use more caution when pursuing someone who appears to be "mentally disturbed or having an episode" and who has not committed a crime or become violent, this was not a normal circumstance because Keiser had stolen a bulldozer, moved it into traffic on US-23, and attacked a police officer during the officers' pursuit of Keiser. Trial Tr. Vol. 2, 62-63.

Testimony at trial also demonstrates that the officers used various methods to try to gain control over Keiser prior to attempting to physically restrain him. Lynch testified that the officers "went up the force continuum and used several methods" to subdue Keiser prior to entering the water and attempting to physically take him into custody. *Id*. at 43.

Testimony suggested that the officers continuously attempted to get Keiser to come out of the water voluntarily,[4] but that those efforts were unsuccessful.[5] Further, officers attempted to subdue Keiser by shooting him with an air cartridge taser. The taser was ineffective, however, because Keiser was wearing a dense coat and the taser could not properly penetrate his skin. *Id*. at 179.

Although Landis asserts that using a taser on Keiser while he was standing in the water was unreasonable, a reasonable jury could reach a contrary conclusion based on trial testimony. Lynch testified that although he was aware that a taser should generally not be used when there is a "significant amount of water" and "drowning is imminent," he was not concerned when Galarneau directed him to use a taser on Keiser because "the depth of the water was not a concern. To me it was very minor. It was up to approximately his ankles."[6] *Id*. at 26.

---

[4] Lynch stated that Baker "continually gave [Keiser] verbal instructions to step out [of the water], show us your hands, place your hands. . .on your head." Trial Tr. Vol. 2, 44. Baker similarly testified that at the scene, he explained to Lynch, that "I tried everything I could to ask [Keiser] to step out of the watery area," including asking him to sit on a stump on dry land and "back[ing] off so that he [wouldn't] feel threatened" *Id*. at 167.

[5] Jager testified that attempting to coax Keiser to voluntarily come out of the water was the first course of action for a reasonable officer to take. *Id*. at 115. Jager testified, however, that he believed the officers' efforts to get Keiser out of the water voluntarily were insufficient. Based on the testimony at trial a reasonable jury could find that the officers made a sufficient effort to get Keiser out of the water voluntarily.

[6] One of the issues for the jury to decide at trial was "what authority, if any, and what instruction, if any, [Galarneau] gave to [Lynch]." Trial Tr. Vol. 2, 30. Galarneau was employed by the Michigan State Police Department and Lynch was employed by the Livingston County Sheriff's Department. Lynch testified that the state police and the sheriff's department are two separate police agencies, and that therefore, Galarneau was not his supervisor at any time during the incident and did not have the authority to order him to do something, though he could ask him to. *Id*. at 77-78.

Further, there is sufficient evidence to show that force used by Galareau and the other officers once they entered the water and attempted to physically restrain Keiser was reasonable. Testimony suggested that Keiser attempted to resist arrest, and that Galarneau had screamed at Keiser to give Galarneau his hands so that the officers could effectuate an arrest without struggle. *Id*. at 59. Further, although Lynch used stun tasers on Keiser several times, Lynch testified that he only physically responded to the tasers once. *Id*. at 53-54. Finally, Galarneau testified that Lynch used the stun taser and Galarneau struck Keiser in the legs with a baton and grabbed him by the shoulders in an effort to gain control over Keiser. Trial Tr. Vol. 4, 4-5, 23.[7] Under these circumstances, a reasonable jury could find that the force used by Galarneau was reasonable to gain control over Keiser and effectuate an arrest.

Landis also argues that "everyone agrees that the natural physical result of the actions undertaken by Galarneau and others would force Keiser's head down in a watery environment" and that the "natural expectation is that there was a concomitant duty to either remove him from the watery environment to accomplish the handcuffing or to take affirmative steps to make certain that Keiser's head did not go in the water."[8] Docket No. 139 ¶ 9. Landis further asserts that even if Keiser forced his own head into the water, Galarneau still had a duty to pull his head out of it. *Id*. at ¶ 5.

---

[7] Galarneau asserted that the taser and the baton were methods of "pain compliance."

[8] Despite the fact that Landis asserts that "everyone agrees" the natural consequence of the actions undertaken by the officers would force Keiser's head into the water, testimony from trial contradicts this assertion. Lynch, in fact, testified that "the physics of two men pulling forcefully trying to get an arm backwards, in my opinion, would work the opposite way and pull him up out of the water." Trial Tr. Vol. 2, 51.

8

There is sufficient evidence to conclude that a reasonable officer might not have thought drowning was a concern during the seizure of Keiser, and that the officers did attempt to remove Keiser's head from the water. The officers testified that the water was relatively shallow, and Galarneau asserted that "the concern was not that he would drown, the water wasn't deep enough. His shoulders were above the water. His head was above the water. He put his face in the water. . . .If your face goes in the water, even my kids know that you don't breathe under water." Trial Tr. Vol. 4, 20-21. Further, although Galarneau admits that he did not pull Keiser's head out of the water or instruct anyone else to do so, Lynch testified that once he noticed Keiser's head was in the water, he "grabbed the back of his hair and attempted to pull upward."[9] Trial Tr. Vol. 2, 58. Baker further testified that both he and Lynch attempted to pull Keiser's head out the water, and that "[Keiser] was pushing his head so far down that Lynch literally ripped hair right out of his head trying to get his head out of the water." Trial Tr. Vol. 3, 18.

Based on this testimony, a reasonable jury could have concluded that Galareau used reasonable force during the seizure of Keiser. The circumstances in which the officers were acting were unique and chaotic, and testimony suggests that officers attempted to remove Keiser from the water without physically engaging him. Testimony also demonstrates that once officers did attempt to physically restrain Keiser, he resisted arrest, and force was necessary to gain control over him. Further, there was sufficient evidence to support a conclusion that a reasonable officer could have believed that

---

[9] Lynch also testified that the other officers were not in a position to observe that Keiser's head was in the water at the time because "they were concentrating on securing him in handcuffs. [Keiser] was continually resisting. . . .They were doing the task at hand." Trial Tr. Vol. 2, 59.

9

drowning was not a concern, and that the officers did attempt to pull Keiser's head out of the water. Therefore, the Court denies Landis's renewed motion for judgment as a matter of law.

### 2. Landis's Motion for a New Trial

In the alternative, Landis moves for a new trial pursuant to Fed. R. Civ. P. 59(a). A court may grant a new trial for a wide variety of reasons, including "if the verdict is against the weight of the evidence, if the damages award is excessive, or if the trial was influenced by prejudice or bias, or otherwise unfair to the moving party." *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000). The moving party has the burden of demonstrating the necessity of a new trial. *Heriges v. Wilson County*, No. 09-0362 , 2010 U.S. Dist. LEXIS 111327, at *13 (M.D. Tenn. Oct. 19, 2010) (citing *Clarksville-Montgomery Co. Sch. Sys. v. U.S. Gypsum Co.*, 925 F.2d 993, 1002 (6th Cir. 1991)) ("The burden of showing harmful prejudice rests on the party seeking the new trial.").

### A. Jury Instructions

Landis first argues that the Court erred by refusing to give her requested jury instructions as to several matters. "The standard of review for jury instructions is that they are 'reviewed as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision.'" *Innes v. Howell Corp.*, 76 F.3d 702, 714 (6th Cir. 1996) (quoting *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72 (6th Cir. 1990)). A district court's jury instructions will be reversed "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Innes*, 76 F.3d at 714.

First, Landis asserts that a new trial should be granted because the Court refused to give her requested instruction as to "joint participation." Landis objected to Galarneau's request that the jury be instructed that its determination of excessive force had to rely only on the voluntary actions of Galarneau, undertaken in his personal capacity, and that he was not responsible for the conduct of others. Landis asserted that Galarneau's reliance on *Rizzo v. Goode*, 423 U.S. 362 (1976), for this proposition was inapposite. Landis argues that the case was more properly governed by the concept of "team effort/joint participation" because the "takedown and handcuffing of Keiser could not and did not occur without the joint participation and concerted action of Defendant Galarneau and Deputies Baker and Lynch."[10] Docket No. 138 at 2.

The Court did not err by refusing to give Landis's requested jury instruction. First, a joint participation instruction would improperly state the law in the Sixth Circuit and would unnecessarily confuse the jury. Landis brought her claims pursuant to § 1983, and "only officers with direct responsibility for the challenged action may be subject to Section 1983 liability." *Wilson v. Morgan*, 477 F.3d 326, 337 (6th Cir. 2007) (citing *Ghandi v. Police Dept. of Detroit*, 747 F.2d 338, 351-52 (6th Cir. 1984)) (plaintiff's argument that defendants acted

---

[10] Landis bases this argument on cases in the First and Ninth Circuits which discuss the theory of "team effort." The Ninth Circuit has rejected "imputing liability in civil rights cases to law enforcement officers solely on their status as team members." *Halbert v. County of San Diego*, No. 07-1607, 2010 U.S. Dist. LEXIS 30563, at *10 (S.D. CA. March, 30 2010) (citing *Chulman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996) (rejecting a "team effort" theory and stating that defendant must be an integral participant in the activity leading to plaintiff's injuries). The court in the case cited by Landis in the First Circuit, *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 560-62 (1st Cir. 1989), based its holding that all four officers involved in the case could be liable for plaintiff's injuries because the injuries were a result on "team effort" on the grounds that each officer was a proximate cause of the injury. *Id*.

11

in "joint concert" in effectuating an arrest of three plaintiffs ignores that officers must be directly responsible for the challenged action to be subject to § 1983).[11]

Further, Landis explained to the Court during trial on February 16, 2010 that the jury instruction was intended to inform the jury that Galarneau should not be judged solely by his own actions, but rather, that he could be liable if he was an integral participant in a series of events that led to a violation of Keiser's rights. The Court covered these grounds at trial by instructing the jury on proximate cause instead of giving either Landis or Galarneau's requested jury instructions. The Court's instructions made clear that Galarneau could be liable even if his actions occurred at the same time or in combination with another event. The instruction allowed the jury to consider the interplay of Galarneau's actions with those of the other officers when determining whether Galarneau used excessive force.

Landis also asserts that the Court erred by refusing to give the jury an instruction that defendant need not have any "specific intent" to be held liable. Similarly, Landis argues that the Court erred by refusing to give an instruction on gross negligence or recklessness and for failing to give her requested definition of recklessness, despite the fact that "the Court allowed argument on recklessness as a Fourth Amendment standard and allowed the parties to argue punitive damages, which in part references reckless conduct." Docket No. 144 ¶4(c)-(d).

---

[11] Under very limited circumstances, officers may also be liable under a theory of supervisory liability. *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 200) (a supervisor is liable under § 1983 where they "either encourage the specific incident of misconduct or in some other way directly participate in it."). There was no assertion in this case that Galarneau had any supervisory liability whatever.

The standard for a reasonable seizure requires only that there is an "objectively reasonable" seizure. *Graham*, 449 U.S. at 393-94. Further, § 1983 does not require proof of specific intent or gross negligence to evidence a violation. *See Paratt v. Taylor*, 451 US 527, 534 (1981) ("Nothing in the language of § 1983 or its legislative history limits the statute solely to intentional deprivations of constitutional rights."); *Lewellen v. Metropolitan Govt. of Nashville*, 34 F.3d 345, 351 (6th Cir. 1994) (internal citation omitted) ("Gross negligence is not actionable under section § 1983, because it is not 'arbitrary' in the constitutional sense."). Therefore, evidence proving the elements of "specific intent," "gross negligence," or "recklessness," was not required to demonstrate that Galarneau used excessive force. Thus, introducing these elements to the jury would have been wholly unnecessary and would have done little but mislead or confuse the jury as to what elements *were* in fact required to prove a Fourth Amendment violation.

Therefore, the Court finds that it did not err by refusing to give Landis's requested jury instructions, and it denies Landis's motion for a new trial on these grounds.

B. <u>Closing Arguments</u>

Landis also argues that Galarneau's counsel engaged in persistent misconduct by mischaracterizing facts and testimony and by arguing improper, irrelevant, and inflammatory facts. Docket 144 ¶ 4(e). Landis further argues that Galarneau's counsel persistently mischaracterized the state of the law as it relates to excessive force under the Fourth Amendment and to the duties of the officers to Keiser, by asserting that the officers did not owe a duty to Keiser prior to handcuffing him. Docket 144 ¶ 4(f). Other than these conclusory arguments, Landis's brief asserts only that, during closing arguments,

13

Galarneau's counsel misrepresented facts and the law "in order to claim that there was no duty owed to Keiser prior to the time that he was handcuffed, a duty which is belied by Exhibit 35, admitted at trial, Michigan State Police Special Order Number 54." Docket No. 144 at ¶ 6.

"Alleged misconduct during closing argument is only a basis for a new trial under limited circumstances." *Lee v. Metro. Gov't of Nashville & Davidson County*, No. 3:06-0108, 2009 U.S. Dist. LEXIS 69825, at *35-36 (M.D. Tenn. Aug. 10, 2009) (citing *Fuhr v. Sch. Dist. of the City of Hazel Park*, 364 F.3d 753, 760 (6th Cir. 2004)). The moving party must establish that the arguments were prejudicial and that the jury's verdict was influenced by them. *Fuhr*, 364 F.3d at 760.

Even assuming there was any misstatement, Landis has failed to demonstrate that they prejudiced the jury substantially enough to warrant a new trial. After only 15 minutes of deliberation, the jury returned a verdict that Galarneau had not used excessive force in violation of Keiser's constitutional rights. Given this result, it seems highly unlikely that even if the jury thought that Galarneau owed a duty to Keiser prior to handcuffing him, that it would have found that Galarneau breached that duty by using excessive force.

Further, as defendants assert, Landis provides no constitutional basis for her argument that the police officers had a duty to Keiser prior to handcuffing him. Though the Michigan State Police order is *relevant* to the issue of whether a plaintiff's constitutional rights were violated, a violation of a state policy, procedure, or statute is not *dispositive* of whether a defendant violated a plaintiff's constitutional rights. See *Davis v. Scherer*, 468 U.S. 183, 194 (1984).

The Court, therefore, denies Landis's motion for a new trial on the basis of improper closing argument.

C. Cumulative error

Finally, Landis asserts that a new trial should be granted on the basis of cumulative error. There is no development of this claim in the Landis brief, which simply states that one ground for new trial is "cumulative error." Because Landis has failed to identify any errors at trial that would support a finding of cumulative error, this ground for relief is denied.

Galarneau argues that Landis's motion asserts that the verdict is against the weight of the evidence. Insofar as her "cumulative error" argument attempts to assert this claim, it also fails. The Court must accept the jury's verdict, "if it is one which reasonably could have been reached." *Denhof*, 494 F.3d at 543 (quoting *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967)). For all the reasons set forth above, the Court finds that a jury could reasonably have found for Galarneau based on the evidence.

Therefore, Landis has failed to demonstrate any basis on which the Court can grant a new trial, and her motion for a new trial is denied.

## CONCLUSION

Landis has not demonstrated that there was insufficient evidence admitted at trial on which a reasonable jury could find for Galarneau nor has she demonstrated that there are any grounds on which the Court can grant a new trial. The Court, therefore, denies Landis's Renewed Motion for Judgment as a Matter of Law, or In the Alternative, for a New Trial.

## ORDER

**WHEREFORE,** it is hereby **ORDERED** that Plaintiff's Renewed Motion for Judgment as a Matter of Law, or In the Alternative, for New Trial (Docket No. 144) is **DENIED**.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: November 1, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 1, 2010, by electronic and/or ordinary mail.

Shawntel Jackson
Case Manager